**SO ORDERED.**

**SIGNED this 19 day of February, 2008.**



_____
ROBERT E. NUGENT
UNITED STATES CHIEF BANKRUPTCY JUDGE

_____

DESIGNATED FOR PUBLICATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| EDWARD PAUL LAINE, | ) | **Case No. 05-18799** |
| | ) | **Chapter 7** |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| EDWARD PAUL LAINE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **Adversary No. 06-5086** |
| | ) | |
| GALE T. GREGORY-LAINE, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| | ) | |
| REAGAN VICTORIA LAINE, by and | ) | |
| through her mother and natural guardian, | ) | |
| Gale Gregory | ) | |
| Plaintiff, | ) | |
| v. | ) | **Adversary No. 06-5209** |
| | ) | |

-1-

**EDWARD PAUL LAINE,** )
)
**Defendant.** )
_____)

## MEMORANDUM OPINION AND ORDERS

Introduction

Before the Court in a combined evidentiary proceeding are a contested matter and two adversary proceedings: (1) the United States Trustee's motion for (a) discretionary dismissal under 11 U.S.C. § 707(a) and for mandatory dismissal for substantial abuse under § 707(b) (the "Motion to Dismiss"[1]); (2) debtor Edward P. Laine's complaint to determine that certain attorneys fees awarded by a Texas state matrimonial court to his former wife, Gale T. Gregory-Laine, are not "support" within the meaning of § 523(a)(5) and are therefore dischargeable (the "523(a)(5) Complaint"[2]); and (3) Gale Gregory-Laine's complaint as guardian of Reagan Victoria Lane, an infant, to determine that Edward Laine's cashing and spending the proceeds of certain "educational" U.S. Savings Bonds set over to their daughter Reagan by the Texas matrimonial court are debts that should be excepted from discharge under § § 532(a)(4), (a)(5), or (a)(6) (the "Bond Complaint"[3]).

The Court convened a trial of these matters on October 30 and 31, 2007 at Wichita. William A. Schantz appeared for Richard A. Wieland, United States Trustee. Debtor Laine appeared by Todd Allison. Gale T. Gregory-Laine (herein "Gregory") appeared by Mark J. Lazzo. After the

_____

[1] Dkt. 35 (No. 05-18799). This case was filed on October 15, 2005 and all issues are therefore decided under the Federal Bankruptcy Reform Act of 1978 (the "Bankruptcy Code"), as amended. The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, effective October 17, 2005, does not apply.

[2] Adv. No. 06-5086.

[3] Adv. No. 06-5209.

-2-

trial, Gregory filed a Motion for Conditional Stay Relief in the main case[4] and, by agreement of the parties, this additional matter was submitted on the papers for resolution along with the contested matter and adversary proceedings.

For the reasons set forth below, the Court concludes that Laine's chapter 7 case should be dismissed for cause under § 707(a) and, in the alternative, as a substantial abuse of chapter 7 under § 707(b). Because the Court dismisses the chapter 7 case today, the § 523(a)(5) Complaint and the Bond Complaint are moot and therefore dismissed without prejudice. The Motion for Conditional Stay Relief is denied in part. Other orders are set out below.

Jurisdiction

The Court has jurisdiction over this contested matter and these proceedings under 28 U.S.C. § 1334. These controversies are core proceedings under 28 U.S.C. § 157 (b)(2)(A) and (I).

Facts

Debtor Edward P. Laine filed this case on October 15, 2005. At that time, he lived in Wichita, Kansas, and practiced as a pathologist with a local pathology group. Laine is a doctor of osteopathy and is 40 years of age. At the time of trial, Laine had moved to and lived in Akureyri, Iceland since April of 2007 and was an employee of the Icelandic government, engaged in the practice of pathology. Before the petition date, Laine became employed by Southcentral Pathology Consultants P.A. in August of 2000, but was terminated in August of 2004. After intermittent periods of unemployment, he worked for Heartland Medical Consultants from 2005 until his departure for Iceland in 2007. He testified that he intends to return to Kansas at some point, but that his employment contract with the Icelandic government runs for three years.

---

[4] Dkt. 96 (No. 05-18799).

Laine graduated from high school in 1984. Laine holds bachelor's degrees in biochemistry and psychology from the University of Michigan at Dearborn along with his doctor of osteopathy from Michigan State. He earned that degree in 1993. Upon his graduation, he performed internships and residencies in Ohio, Michigan, and Indiana. He held practicing positions in California and Texas beginning in 1999. He moved to Wichita in August of 2000 and became employed by Southcentral Pathology.

Laine is an insulin-dependent diabetic, having been diagnosed as a juvenile. Today, he also suffers from acid-reflux disease. Laine takes several medications to control these health conditions. He is otherwise in good health and appears to be physically fit.

Laine married Gale T. Gregory in 1994, after meeting her during their respective internships or residencies. Gregory is also a doctor of osteopathy and currently serves as an emergency room physician in San Antonio, Texas. Gregory graduated from high school in 1974 and is a graduate of the University of Texas-Medical Branch at San Antonio where she received a bachelors degree in nursing. She was in nursing until 1984 or 1985, at which time she entered graduate school at the University of Texas-San Antonio. In 1987, she was admitted to the medical school at the University of Des Moines and received her doctor of osteopathy degree in 1993. She did internships in Michigan until 1997 and, in this process, met and married Laine. Upon completing her internship in 1997, she accompanied Laine to Indianapolis for residency. She moved to Texas in 1999 and practiced as an emergency room physician in Dallas until June of 2002 at which time she moved to San Antonio and joined her present employment with EMANON which is a chain of hospitals.

Gregory testified credibly that Laine's frequent changing of jobs made it difficult for her to maintain her career in Texas and that she was unable to secure employment in Kansas. Despite the

-4-

parties' essentially separate marital existence through most of the late 1990's and early 2000's, Reagan Laine was born on October 17, 2001. Laine was absent from Texas for almost the entirety of Gregory's pregnancy and confinement and, according to Gregory, supplied no financial or emotional support in that time period. Relations between the parties appear to have been severely strained.

Gregory commenced a Texas divorce proceeding in the Dallas County court on January 2, 2002.[5] On that date, the Texas court entered what appear to be customary ex parte temporary orders that restrained Laine from alienating the couple's property and from threatening or harassing Gregory.[6] The terms of those orders were later memorialized in an agreed injunction order signed by both Laine's and Gregory's counsel and entered by that court.[7] The divorce case was bitterly fought, resulting in Gregory and Laine each incurring substantial fees and the Texas court awarding Gregory a judgment, styled as support, for those fees in the amount of $110,173.[8] The Texas court conducted a trial in the case on March 18, 2004, but Laine did not appear. Prior to that time, Laine had informed the Texas court that he considered it to have no jurisdiction over him or his assets and he simply ceased to participate in the proceeding in any way.[9] A final divorce decree was entered

---

[5] At that time, Gregory was living in Dallas with their newborn daughter, Reagan. Laine was living in Wichita, Kansas.

[6] Ex. S, p. L000759-764.

[7] Ex. S, p. L000744-749.

[8] The amount of attorney's fees awarded was approximately one-half of the amount sought by Gregory.

[9] Gregory's attorney established on cross-examination of Laine that Laine participated in the Texas divorce proceedings through five different attorneys from January 2002 to October 2003 without challenging the Texas court's jurisdiction. The Dallas County court file contains correspondence from Laine to the court indicating as early as June of 2003 that he would no

-5-

on April 8, 2004, and incorporated the attorney fee judgment against Laine.[10] Laine did not appeal the Texas divorce decree. He has not made any voluntary payments on the attorney's fee judgment since its entry.

Also during the Texas divorce proceeding, the Texas court entered supplemental restraining orders that enjoined Laine from commencing or maintaining legal action in any other forum concerning a divorce or divorce-related issues.[11] After those orders were entered, and despite his specific knowledge of them and their content, Laine filed a Kansas divorce case in Sedgwick County District Court on October 17, 2003. Although Laine's Kansas counsel advised the Kansas court of the pre-pending case in Texas, the Kansas court entered a limited decree terminating the marriage and setting the educational bonds over to Laine. Laine did not advise the Kansas court of the Texas restraining order entered October 15, 2003 that enjoined him from commencing the Kansas divorce action. The Kansas decree was entered on December 30, 2003.[12] Gregory was served, but did not participate in the December 30 hearing. Early in 2004, however, she sought to have this Kansas decree vacated and, on April 27, 2004, another Sedgwick County judge did so on the basis of comity among the courts of sister states. Immediately after that order was entered, Laine sold the education bonds. On April 28, 2004, he paid the proceeds, approximately $45,000, as part of the purchase price of his residence, a $450,000, five-bedroom home in an exclusive subdivision in northeast Wichita. He testified that the funds were to have been paid to his mother to repay her for expenses

_____

longer participate in the case. *See* Ex. S, p. L000483-84.

[10] Ex. 1, p. 17-18.

[11] Ex. S, p. L000381-82 (temporary restraining order entered October 15, 2003); L000372-73 (supplemental temporary injunction entered October 29, 2003).

[12] Ex. 7.

advanced to him during his education, but that she credited his payment on the home against his obligation to her. On April 28, after taking title to the Wichita house, he deeded it to himself, his mother, and one Kara Dutton, as tenants in common. Laine's mother lived there for a short time, as did Dutton, but for the most part, Laine exclusively occupied the residence.

Laine appealed from the Sedgwick County district court's order vacating his Kansas divorce decree, but on October 7, 2005, the Kansas Court of Appeals affirmed this order.[13] The Kansas Supreme Court denied his petition for review. On October 15, 2005, Laine filed this bankruptcy case.

Section 707 Motion to Dismiss

The United States Trustee asserts that Laine's case should be dismissed for cause under § 707(a) and as a substantial abuse of chapter 7 under § 707(b). In order to assess these claims, the Court must consider additional facts pertinent to Laine's financial situation.

Initially, the Court notes that in Laine's schedules, he lists only one unsecured creditor, Gale Gregory, on account of her attorney's fees claim. He lists Washington Mutual, his home mortgage lender, on Schedule D and, on Schedule E, he shows then-currently due income tax liabilities for 2004. According to Laine's testimony, the Washington Mutual mortgage is current and his taxes were timely paid, leaving Gregory as his sole creditor in this case.

The Court also notes that Laine makes a mortgage payment of approximately $3,400 monthly and has reduced the balance of his home mortgage to approximately $230,000. According to the Court's calculations, if Laine's mortgage draws interest at 6 per cent, he will pay it off in some 90

---

[13] *In re Marriage of Laine*, 34 Kan. App. 2d 519, 120 P.3d 802 (2005), *rev denied* No. 92,812, February 14, 2006; Ex. 18.

months. Since moving to Iceland, Laine has retained the home and continued to pay for it. Some un-named people live there, supposedly in exchange for looking after the property in his absence. He charges them no rent. In addition to his mortgage payment, Laine pays, depending on the exchange rate, $2,500 a month in rent in Iceland.

At the time of filing, Laine's income according to his Schedule I was gross pay of $10,000 per month plus $1,000 deferred compensation from his former employer Southcentral Pathology, and, after taxes, he netted about $7,035. According to his Schedule J, his expenses were $7,839, including the child support that he is required to pay to Gregory in the amount of $1,500. At trial, he testified that he subsequently moved to the Heartland Medical Consulting in Wichita where he received $12,000 per month in gross pay, netting approximately $10,000 monthly. He held that position from June of 2005 to March of 2007 at which time he took his current position in Iceland.

Prior to Laine's bankruptcy filing, Gregory garnished Laine's Southcentral Pathology wages to enforce the attorney's fees judgment. After this garnishment, Laine increased his tax withholding with his employer to some 85 per cent of his salary to stymie that effort.[14] Laine continues to communicate with and harass Gregory via the mail, voice mail, and text messages. Laine testified unequivocally that he not only could not pay the attorney's fee debt, but that he *would* not pay it under any circumstances.

At trial, Laine presented two budgets, his American budget and his current Iceland budget. Reconciling the two is complicated because, despite being in Iceland, Laine continues to pay many of his state-side expenses in addition to the house payment. For example, he maintains all of his

_____

[14] Laine's effort to evade the garnishments by modifying his withholding was rejected by the Sedgwick County district court. *See* Ex. 20.

American health insurance even though Iceland has nationalized health care to which he could have access. Laine testified that he is a Type I diabetic and would be ineligible for most health plans were he to allow his American Blue Cross Blue Shield coverage to lapse.

When Laine worked for Southcentral Pathology, he earned, according to his income tax returns for 2003, about $211,500 a year. He lost that position in 2004, but even with that job loss, Laine reported adjusted gross income of $182,000. His adjusted gross income during 2005 was $202,000 (substantially more than the $10,000 per month gross he reported on Schedule I).

The expenses Laine reports on his American budget are significantly higher than those reported in his schedules and include a $500 monthly clothing allowance, a $1,000 monthly food allowance, and a $400 monthly entertainment allowance for visiting physicians. Laine also claims additional continuing medical education (CME) expense of $247 per month which includes his travel to the United States and Europe for pathology seminars.

He also claims substantial actual expenses for the care and support of his elderly parents in Michigan, even though they are not listed as dependents on his schedules and are not his legal dependents. Indeed, Laine testified that he supplies his parents with medicine, pays for their home repairs, pays for their assisted living needs and even provides them with spending money. In addition, he travels to Michigan from Iceland periodically to look after them. Laine stated that he paid to install wood floors in their home and sodded their yard in 2005 and 2006.

The Court concludes that Laine's reported monthly expenses during his stay in Iceland, plus his retained American expenses, are as follows:

| ICELAND EXPENSES | |
|---|---|
| Rent | 2250 |

| | |
|---|---|
| Utilities (Iceland) | 700 |
| Disability Insurance | 103 |
| Food | 700 |
| Fuel | 215 |
| Auto Expense (car rental) | 650 |
| Continuing Education (includes travel from Iceland) | 762 |
| Grooming | 30 |
| Airfare to return to USA | 600 |
| Child Support | 1500 |
| **TOTAL ICELAND EXPENSES** | **$7,510** |
| **AMERICAN EXPENSES RETAINED** | |
| Auto Expense (car in USA) | 275 |
| House Payment (Wichita residence) | 3200 |
| Utilities | 234 |
| Water | 60 |
| Phone | 60 |
| Lawn Service | 83 |
| Clothes | 500 |
| Medical/Dental | 400 |
| Recreation | 400 |
| Life Insurance | 47 |
| Home Warranty | 39 |
| Home Owners | 39 |
| **TOTAL AMERICAN RETAINED EXPENSES** | **$5,337** |
| **GRAND TOTAL MONTHLY** | **$12,847** |

Case 05-18799   Doc# 102   Filed 02/19/08   Page 10 of 23

The Icelandic government currently pays Laine approximately ISK 900,000 each month.[15] The exchange rate for Krona to U.S. dollars on the date of trial was ISK 61.15 to $1.00 USD. Thus his monthly salary at trial was $14,631.76 before Icelandic and United States taxes. Laine testified that he nets about $8,000 per month. He thinks he is "losing" about $2,000 per month although the above table suggests that his shortfall is considerably more, leading the Court to wonder where he gets the additional funds to cover the shortfall or to question the legitimacy of some of the claimed expenses. The Court also notes that when Laine was asked why he left the fairly lucrative position in Wichita (where, one assumes, it is far less expensive to live than in Iceland), he stated that the pay cut was justified by the increased prestige of his position.

Laine also testified to his "obligation" to support his aged parents and set forth his need to expend thousands of dollars each month for them. It is very difficult to see where this money comes from, leading the Court to not only question Laine's motivations, but also his credibility on these critical money issues.

Legal Conclusions Pertaining to § 707

There is no doubt that Laine filed his bankruptcy case to frustrate Gregory's efforts to collect his debt to her. Other than his home lender (the Wichita residence), Gregory is his sole creditor. Laine's prepetition conduct strongly suggests an absence of good faith. His inveterate insistence that he will never pay the debt to Gregory is but one indication of this. Laine has never held onto his lucrative positions very long and appears to have left this country to work in Iceland in an effort to avoid his liability to Gregory. He has placed above his obligation to pay her, nearly every

_____

[15] Iceland's medium of exchange is the Krona (ISK).

conceivable expense, including maintaining a lavish home in a prestigious suburb in this community while he works in Iceland. After Gregory garnished his wages in Kansas, Laine increased his income tax withholding to 85 per cent of his gross salary. He devotes substantial sums to maintaining his parents to whom he has no legal obligation. Moreover, Laine's monthly food and clothing expenses, $1,000 and $500 respectively, far exceed reasonableness.

Courts considering motions to dismiss for cause consider far more than the debtor's financial capabilities or motivations. They are to consider whether the debtor has a "frivolous, non-economic motive for filing a bankruptcy petition, when there is a sinister or unworthy purpose, or when there is an abuse of the judicial process."[16] In the Eighth Circuit case *Huckfeldt v. Huckfeldt*, the debtor filed a bankruptcy case solely to defeat a divorce decree. The appellate court upheld a finding by the bankruptcy court that the debtor's sole motivation in filing was:

> . . . for the purpose of frustrating the divorce court decree and forcing his ex-wife into bankruptcy, at a time when his financial prospects made him anything but an "honest but unfortunate debtor" needing Chapter 7 relief.[17]

*Huckfeldt* is eerily similar to the matter before the Court today. Huckfeldt, a doctor, not only filed to frustrate his ex-wife's attempts to enforce a divorce decree, he manipulated his earnings so as to further achieve his non-economic motives. Laine's conduct is very similar. He is an unworthy debtor and cause exists to dismiss his case under § 707(a)(1) -- prejudicial and unreasonable delay resulting from his lack of good faith.

This case should also be dismissed under § 707(b) as a substantial abuse. In the Tenth

---

[16] *In re Christiansen*, 251 B.R. 69, 70 (Bankr. W.D. Mo. 2000), citing 4 *Collier on Bankruptcy* ¶ 707.03, at 707-10-11 (15th Ed.1992).

[17] *Huckfeldt v. Huckfedlt (In re Huckfeldt)*, 39 F.3d 829, 833 (8th Cir.1994).

-12-

Circuit, § 707(b) motions are decided by applying the totality of the circumstances test described by the Tenth Circuit in *In re Stewart*.[18] *Stewart* is not unlike the present case. There the debtor was a specialist in obstetrics and gynecology who, in an attempt to evade paying a variety of domestic obligations arising out of a divorce decree, took a job paying approximately $30,000 a year (as opposed to the then-customary $175,000 to $250,000 he could have made in private practice), lived beyond his means, and filed a chapter 7 case. In deciding how to evaluate § 707(b) motions, the Tenth Circuit considered standards adopted in various circuits and embraced the "totality of circumstances" test employed by several.[19] The appeals court applied a multi-factor test to the circumstances, drawing various factors from other courts adopting the totality standards.[20] It is appropriate for this Court to do the same. All but one of the *Stewart* factors weigh against Laine in this analysis.

### Earning Potential and Ability to Repay

Laine has the proven potential to earn well in excess of $200,000 a year as a practicing pathologist. Were he to moderate his living expenses and habits even slightly, he could likely afford to repay some if not all of his obligations to Gregory.

### Calamity, Disaster or Illness

Laine made no showing of having suffered any calamities, disasters or illnesses that place an urgent call on his resources. His voluntary relocation to Iceland does not fall under this category. His diabetes and acid reflux ailments are not unlike many debtors who suffer from various medical

---

[18] 175 F.3d 796 (10th Cir. 1999).

[19] 175 F.3d at 808, citing *In re Green*, 934 F.2d 568, 572 (4th Cir. 1991), *In re Krohn*, 886 F.2d 123, 126-27 (6th Cir. 1989), and *In re Lamanna*, 153 F.3d 1, 5 (1st Cir. 1998).

[20] 175 F.3d at 808-810.

conditions or afflictions but lead normal, productive lives. Clearly, those medical conditions have not hampered his ability to earn a substantial income.

### Stable Future Income

Laine has a stable future income. Laine is currently employed in the first year of a three-year contract to provide pathology services to the Icelandic government. There is no evidence that he cannot continue in that work. Plus, Laine has consistently earned $200,000 or more per year, even while employed in the United States. Any earning limitations he labors under now are largely self-imposed.

### Eligibility for Chapter 13 Relief

Laine is eligible for chapter 13 relief.

### Other Means of Relief

That there is unlikely to be a private remedy for this dispute is the lone *Stewart* factor that weighs in Laine's favor. However, Laine's lack of legal recourse to the Texas attorney's fee judgment is attributable, in part, to his blind defiance and voluntary refusal to participate in those proceedings, including his failure to appeal the Texas decree.

### Reduction of Expenses without Hardship

Laine can certainly reduce his expenses. He is a single man who has chosen, after his divorce, to tie up considerable equity, including his daughter's bonds, in a very expensive home in an exclusive neighborhood. And, despite having accepted an overseas assignment for the next three years, he retains the home and allows others to live there rent-free. Laine certainly does not need a 5,000 square foot home or a $3,200 house payment to live comfortably and in dignity in this community. Indeed, he is employed in Iceland and apparently has chosen not to live here at all.

-14-

He does not need to spend $6,000 a year on clothing. He was not under any obligation to take a cut in pay to leave the United States and accept employment in Iceland. He is under no legal obligation to support his parents, especially to the detriment of a valid legal obligation to pay support to his ex-spouse and minor child.

Ability to Budget

Laine appears to have the ability to budget his finances, but does not appear to comprehend the ruinous effect on them that maintaining two residences has. Laine insists that he would lose cash flow if he sold his Wichita house because he would sustain a loss compared to what he paid. Given that he expends over $12,000 a month on $8,000 net pay, being released from a $3,200 monthly obligation would greatly enhance his financial position.

Bad Faith

Laine has steadfastly resisted cooperating with the state court that has jurisdiction of his divorce case and has resisted efforts of Gregory to collect her judgment at Kansas law. Laine attempted to increase his withholding to minimize Gregory's efforts to enforce her judgment through garnishment. Violating a Texas court order, he filed his own divorce case in Kansas while the Texas case was pending. He failed or refused to appeal the Texas judgment and it is now final. He has taken a cut in pay to flee to a foreign country where he is difficult to serve with process.

Laine has remained defiant and contemptuous toward the Texas divorce decree and toward Gregory. A sampling of his defiant attitude is reflected in his communications during the pendency of the Texas divorce case.

On June 17, 2003, Laine wrote the Texas court:

I Edward P. Laine, D.O. resident of State of Kansas will no longer participate in the legal proceedings in The State of Texas regarding [the pending divorce]. In fact I

-15-

never plan on stepping foot in the State of Texas again! . . .
Dr. Laine, will no longer participate in this case in any shape, form, or fashion.[21]

On October 17, 2003, Laine wrote to the Texas court, apparently after receiving notice of

the temporary restraining order barring him from commencing a divorce action:

. . . I Edward P. Laine, D.O., will not be available for any hearing scheduled for October 29, 2003 [the date of the injunction hearing]. . . . In addition I Edward P. Laine, D.O. do not recognize jurisdiction of the 255th Judicial Court as related to a divorce matter based on my Kansas residency and have instituted a divorce proceeding . . . from Kansas.[22]

On February 19, 2006, Laine returned the 2004 final decree of divorce to the Texas court:

. . . I will not recognize Texas jurisdiction as related to a divorce as Texas failed to have jurisdiction over me based on a non-resident status . . .[23]

Laine wrote a medical school colleague of Gregory's (Reagan's godparent) in August

of 2005, giving his side:

She paid her way and I paid mine. Now she thinks (based on her exparte [sic] Texas divorce decree) I will pay the legal expenses she generated. Never. Get real.[24]

In none of these communications did Laine express an inability to pay the debt. Instead, he views

the attorney's fee judgment as unfair and refuses to pay it. Yet for the nearly one and one-half years

that Laine actively participated in the Texas divorce proceedings with counsel, he did not complain

of the Texas court's jurisdiction over him. These communications, combined with his threats[25] and

candid statement to this Court that he would not pay the divorce debt, amply demonstrate Laine's

---

[21] Ex. S, L000483.

[22] Ex. S, L000263.

[23] Ex. S, L000301.

[24] Ex. 8.

[25] Ex. 14.

-16-

bad faith.  The Court concludes that Laine did not file this case with a good faith purpose.

Because only one *Stewart* factor weighs in his favor, this Court has no hesitancy in concluding the Laine's filing constitutes a substantial abuse of chapter 7 and should be dismissed.

<u>Permanently Barring Gregory's Debt from Discharge in Future Cases</u>

At the final pretrial conference, counsel for Gregory orally requested the addition of a claim for relief, asking that if the Court were to grant the United States Trustee's motion to dismiss, Gregory's debt be declared non-dischargeable in any subsequent bankruptcy case Laine may file. This relief, although extraordinary, is available under § 349(a) where cause exists.[26]  The Court directed Gregory to file a separate motion before trial so that Laine would have appropriate notice of the additional claim and an opportunity to rebut it at trial or in a later hearing.[27]  No motion was filed.  Instead, Gregory filed a pleading seeking to annul the stay to make good state court service of process she made on Laine while he was in Kansas for the trial.[28]  In the state court action, Gregory seeks recovery of the bonds she says were in Laine's possession, but set over to her under the Texas decree, as well as contempt sanctions against Laine for numerous alleged violations of that decree.  Gregory also filed a contempt motion in the Texas divorce court.  Counsel stated that Gregory took this action to serve Laine before he returned to Iceland because of Laine's avowed

---

[26]  *See In re Frieouf*, 938 F.2d 1099 (10th Cir. 1991), *cert. denied* 502 U.S. 1091 (1992) (A finding of cause under § 349(a) must be premised on bad faith conduct prejudicial to creditors.).

[27]  *See In re Norton*, 319 B.R. 671 (Bankr. D. Utah 2005) (Before bankruptcy case can be dismissed with prejudice to debtor's ability to discharge debts in future bankruptcy case, debtor must be afforded due process rights he would have in an adversary proceeding to deny discharge.); Courtroom minute sheet, October 30, 2007, Dkt. 95 (main case) (Counsel directed to notice the motion to the December miscellaneous motion docket).

[28]  Dkt. 96 (main case).

intent to remain there and the inherent difficulty she would have in serving process on him there. By agreement of counsel, this motion was taken under advisement along with the present matters and is addressed later in this Order.[29]

Section 349(a) states in part:

> Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed;[30]

Thus, only if the Court finds cause can it enter an order barring future discharge of Laine's debts. In *Hall v. Vance*, the Tenth Circuit held that a showing of egregious circumstances is necessary to support a bankruptcy court's order dismissing a bankruptcy case with prejudice.[31]  In *Hall*, the bankruptcy court dismissed a pro se debtor's chapter 11 case for numerous failures to comply with the Bankruptcy Code and Rules.  The court apparently made the dismissal "with prejudice" on its own motion.  The Tenth Circuit affirmed the dismissal, but remanded for an order removing the "with prejudice" designation.

In *In re Norton*, a bankruptcy court sitting in Utah made an exhaustive examination of the factors to be considered in applying § 349(a) and finding the requisite cause to make a dismissal order with prejudice.[32]  In *Norton*, Judge Boulden made a careful analysis of the due process considerations inherent in finding cause under § 349.  There she determined that the United States Trustee had requested this additional relief in his motion and personally served the motion on the

---

[29]  Dkt. 100 (No. 05-18799).

[30]  11 U.S.C. § 349(a) (West, 2008).

[31]  887 F.2d 1041, 1046 (10th Cir. 1989).

[32]  319 B.R. 671 (Bankr. D. Utah 2005) (serial filer).

-18-

debtor. She compared this procedure to the first-class mail service of process a debtor must receive in a complaint to deny a discharge under § 727(d) and concluded that the debtor had received sufficient notice of the Trustee's request for a § 349(a) discharge bar.

In the present case, Gregory has filed nothing formally requesting this relief. Neither has the United States Trustee. Nor was this claim for relief incorporated into the pretrial order. Whether or not Laine's prepetition conduct would support a discharge bar, due process prevents this Court from imposing that relief without Laine having received written notice, properly served, of Gregory's requested relief. The Court also notes that with the dismissal of this chapter 7 case, Laine will effectively be denied a discharge of these debts until such time as he chooses to attempt to refile. If and when that occurs, Laine will be proceeding under the 2005 law. Under BAPCPA, *all* of the debt arising under the matrimonial decree would likely be excepted from his discharge.[33] Indeed, had this case been filed on October 17, 2005, Laine would likely have run afoul of the current § 707(b) proscriptions on abuse. His eligibility for a post-BAPCPA chapter 7 case is highly questionable at best.

Because Gregory did not file and serve a pleading seeking § 349(a) relief, her oral motion for same must be DENIED.

<u>The Complaints</u>

With the dismissal of this case for cause and for substantial abuse under former § 707(b), the Court need not address either of the currently pending adversary proceedings and both should be dismissed without prejudice because they are moot.

---

[33] *See* § 523(a)(5) and (15), excepting from discharge all domestic support obligations as well as property settlement debts.

<u>The Motion for Conditional Stay Relief</u>

As noted above, Gregory filed a Motion for Conditional Stay Relief immediately after the trial on the motion to dismiss was concluded.[34]  In this motion, Gregory alleges that Laine has repaired to Iceland with the intent of avoiding his legal obligations to her.  She filed this motion because, on October 26, 2007, she filed a state court action in Sedgwick County, Kansas district court seeking recovery of the proceeds of the savings bonds that Laine testified he cashed and put into the purchase of his Wichita home.[35]  On October 29, 2007, she filed a contempt motion in the divorce action pending in Dallas, County, Texas seeking to enforce various portions of that court's divorce decree.  Gregory also filed a motion in that court seeking a transfer of the divorce case and custody proceedings to Bexar County, Texas, where she and her daughter now reside.  All of this was done without first obtaining stay relief in this Court to enable Gregory to make service of process on Laine while he was in Kansas for the trial of this matter.  Gregory alleges that exigent circumstances justify this Court's retroactive annulment of the stay to "make good" these filings and the service of process that might otherwise be void as being in violation of the stay.  Notwithstanding the Court's request, neither Gregory nor Laine has supplied citations of authority on this question.

The Kansas action is, without question, one that was stayed on October 26, 2007.  In it, Gregory seeks a money judgment against Laine for conversion of the savings bonds.  This is plainly an "action against the debtor," stayed by § 362(a)(1).  The status of the Texas actions is less clear.

_____

[34]  Dkt. 96 (No. 05-18799).

[35]  Dkt. 96, Exhibit A styled *Reagan Victoria Laine, by and through her mother and natural guardian, Gale Gregory v. Edward Paul Laine*, Eighteenth Judicial District, District Court, Sedgwick County, Kansas, Case No. 07 CV 3948.

-20-

The transfer motion seems administrative in nature and does not assert an affirmative claim against Laine. The contempt motion seeks to enforce valid support orders, both with respect to unpaid child support as well as attorneys fees that Laine was ordered to pay as part of his support obligations. Former § 362(b)(2)(B) excepted from the stay actions to enforce alimony, maintenance or support so long as the movant did not seek payment from property of the estate. To the extent the Texas contempt motion sought assets of Laine's estate, it was stayed.

Gregory seeks retroactive stay relief to "save" the actions filed in Texas and Kansas and the service of process she made on Laine in October of 2007. As noted above, this Court does not believe that the Texas actions were stayed under § 362(b). There is no need to annul the stay to preserve them going forward. The Kansas petition presents a different situation.

This Court was unable to find any cases featuring the same or a similar set of facts. Tenth Circuit authority is very clear that the circumstances in which a stay may be annulled are extremely limited. In *Job v. Calder*, the Circuit Court dealt with a debtor who, despite having been sued post-petition, failed to notify the state court of his pending bankruptcy case in any way and in fact actively litigated the state court action.[36] The debtor waited until an unfavorable result was reached in the state court before he objected to the judgment creditor's proof of claim, based on the judgment, arguing that the entry of the judgment post-petition was void as in violation of the stay. The Circuit noted:

> Nevertheless, equitable principles may, in some circumstances, be applicable to claimed violations of the stay. The existing case law indicates that courts will apply equitable considerations at least where the creditor was without actual knowledge of a bankruptcy petition and the bankrupt's unreasonable behavior contributed to the

---

[36] *Job v. Calder (In re Calder)*, 907 F.2d 953 (10th Cir. 1990).

-21-

creditor's plight.[37]

In *Calder,* the Tenth Circuit concluded that debtor's "stealthy silence" defeated his tardy attempt to enforce the stay in defeating the creditor's claim.[38]

The Circuit squarely addressed the grounds for annulling the stay in *Franklin Savings Ass'n v. Office of Thrift Supervision.*[39] In this case, the Office of Thrift Supervision ("OTS") attempted to file and prosecute a bill of costs in a federal civil action it had successfully pursued against Franklin. The OTS conceded that by filing the bill after Franklin had commenced a bankruptcy case, it had breached the automatic stay, but sought to have the stay annulled. The Tenth Circuit commented that such relief was only rarely available and then, only in very limited circumstances. It stated:

> While district courts and bankruptcy courts have the authority to "annul" a stay, 11 U.S.C. § 362(d), thereby reinstating previous claims retroactively, such a result is rare and probably available only to claimants who were honestly ignorant of the bankruptcy stay.[40]

Gregory cannot say that she was "honestly ignorant" of Laine's bankruptcy or of the stay when she sued him and had him served while he was in Kansas for the trial of the motion to dismiss. She could have asked this Court to lift the stay before filing and serving the Kansas action, but, like the OTS in *Franklin*, chose to proceed in a different manner. Gregory's Motion for Conditional Stay

---

[37] *Id*. at 956 (citing as an example *In re Smith Corset Shops, Inc.,* 695 F.2d 971, 976-77 (1st Cir. 1982)).

[38] *Id.* at 956-57, refusing to permit debtor to use the automatic stay provision as a trump card.

[39] 31 F.3d 1020 (10th Cir. 1994).

[40] *Id.* at 1023 (citing *Matter of Pinetree, Ltd.*, 876 F.2d 34, 38 (5th Cir.1989); *In re Albany Partners, Ltd.*, 749 F.2d 670, 675-76 (11th Cir.1984)).

Relief must be DENIED with respect to the Kansas action. Because the commencement of the Kansas action and service of process was done in violation of the stay, Gregory's service of the Kansas action on Laine is null and void.

Conclusion

The Court GRANTS the United States Trustee's Motion to Dismiss Edward Paul Laine's chapter 7 case, both for cause under former § 707(a) and for substantial abuse under former § 707(b) and the case is DISMISSED upon entry of this order. Gregory's oral request that the bankruptcy case be dismissed with prejudice to bar future discharge of her claim under § 349(a) is DENIED.

Both of the above-captioned adversary proceedings are DISMISSED WITHOUT PREJUDICE as moot and the Clerk shall enter the appropriate dismissals.

Gale Gregory's Motion for Conditional Stay Relief is DENIED with respect to the Kansas action and the service of process obtained in violation of the automatic stay is null and void. But the Court concludes that the Texas motions relate to administrative matters in that court and to support enforcement. Therefore, to the extent Gregory stakes no claim to property of the estate, the Texas motions are excepted from the ambit of stay under former § 362(b)(2)(B) and may proceed. Counsel for Gregory shall cause this decision to be filed in the newly-filed Kansas action to evidence to the state court that valid service of process of the petition has not been obtained.[41]

# # #

---

[41] Case No. 07 CV 3948, District Court, Sedgwick County, Kansas.

-23-